UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IN RE TALBOTT,

        Plaintiff.

CAUSE NO. 3:21-CV-163 DRL-MGG

OPINION AND ORDER

Dean Talbott, who owns a 39-foot 2000 Carver 356 motor yacht with the hull identification number CDRP0015G900, filed to limit his liability for an incident that occurred on Lake Michigan on September 18, 2020. He seeks an order directing the issuance of notice of the complaint, approving an *ad interim* stipulation, approving a stipulation for costs, ordering monition, and restraining the prosecution of claims.

The court ordered an amended complaint to substantiate jurisdiction. Mr. Talbott's amended complaint expands on the incident that led to this action but omitted any more information on the value of any claims against him or the extent and nature of the damage. He claims that as the yacht docked with a bystander's help, a gust of wind changed the yacht's course causing the bystander to fall from the dock into open water [ECF 8 ¶ 8]. To avoid hitting the bystander, the yacht struck the dock, damaging both the dock and the yacht [*id.*]. The bystander sustained personal injury.

The complaint doesn't say whether an underlying state court proceeding has commenced or whether there has been any determination of liability. It references (but omits) an attorney representation letter indicating that the bystander sustained personal injuries because of the incident [*id.* ¶¶ 15, 20]. The complaint doesn't say the amount sought by the claimant, explain whether a claim is pending, or provide a description of the circumstances allowing an amount to be assumed.

    A.    *Availability of Admiralty Jurisdiction.*

The United States Constitution grants courts the power to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1. This jurisdiction is codified at 28 U.S.C. § 1333(1), which provides that a court has original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). The point of this jurisdiction, and the special rules that accompany it, is to provide the "protection of maritime commerce." *Sisson v. Ruby*, 497 U.S. 358, 367 (1990).

When a party invokes admiralty jurisdiction over a tort claim, the claim "must satisfy conditions both of location and of connection with maritime activity"—a location prong and a connection prong. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Jurisdiction is traced from the activities of the boat owner; thus when maritime jurisdiction exists, it necessarily extends to any injury proximately caused by the activity. *Id.* at 541 ("as long as one of the putative tortfeasors was engaged in traditional maritime activity, the allegedly wrongful activity will 'involve' . . . traditional maritime activity"); *see also* 46 U.S.C. § 30101(a) ("The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.").

The court previously concluded that the location prong was satisfied because the alleged tort occurred on, or was caused by a vessel on, a navigable water of the United States. Turning to the connection prong's two-part analysis, a court must first "assess the general features of the type of incident involved" so as to conclude if the activity is of the class of activities that has "a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534. Second, a court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.*

1. *A Potentially Disruptive Impact on Maritime Commerce.*

The Supreme Court acknowledges "that pleasure boats themselves [have] little to do with the maritime commerce lying at the heart of the admiralty court's basic work." *Grubart*, 513 U.S. at 533. Nevertheless, "the federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674-75 (1982) (emphasis in original). Thus, the incident causing harm must have the general features of an activity that has "a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534.

It is this broad view that led the negligent collision of two pleasure boats on a questionably navigable river in Louisiana to be subject to admiralty jurisdiction—because the general activity of boat operation and navigation could have a potentially disruptive impact maritime commerce. *Foremost*, 457 U.S. at 674-75. A collision between two boats, whether it be on the bayou or in the mouth of the St. Lawrence Seaway, implicates the "the traditional concern that admiralty law holds for navigation." *Id.*

This broad application was further emphasized in *Sisson*, 497 U.S. at 360, in which a fire started in the laundry area of a private yacht docked at a marina on Lake Michigan and spread to other pleasure vessels, damaging the boats and the marina itself. *Id.* Refusing respondent's argument that the absence of commercial vessels at the dock precluded admiralty jurisdiction, the Supreme Court noted:

> We determine the potential impact of a given type of incident by examining its general character. The jurisdictional inquiry does not turn on the actual effects on maritime commerce of the fire . . . nor does it turn on the particular facts of the incident in this case, such as the source of the fire or the specific location of the yacht at the marina, that may have rendered the fire . . . more or less likely to disrupt commercial activity.

*Id.* at 363.

The court decides the general features of an activity by describing "the incident at an intermediate level of possible generality." *Grubart*, 513 U.S. at 538-39 (a fire alone is too general, but a fire that damages nothing but pleasure boats is too specific). This level asks "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id.* at 539 This intermediate level of scrutiny applies admiralty jurisdiction to "virtually every activity involving a vessel on navigable waters." *Id.* at 542-43 ("not every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction" but "ordinarily" admiralty jurisdiction applies).

A generalized description of Mr. Talbott's incident is damage and injury caused by a docking vessel. There is no indication in Mr. Talbott's complaint that the dock was used for commercial activity at the time of the incident, or the injury to the dock or to the helpful bystander impacted commercial activity, but that's not the relevant inquiry. *See Sisson*, 497 U.S. at 363 (jurisdictional inquiry does not turn on the facts of the specific case and instead turns on the general features of the incident). Looking at the activity of docking, it is not difficult, let alone fanciful, to imagine a circumstance in which the collateral damage relating to docking could impact maritime commerce. A commercial craft may be prevented from loading and offloading commercial goods or passengers. A coast guard vessel may be prevented from tying up for repairs. Damage may prevent a first responder from accessing a water emergency. An inoperable slip or a wrecked boat may backup other vessels from coming into port to refuel or restock. All of these scenarios could be described as damage and injury caused by docking a vessel. Thus, the potential disruption to commercial maritime activity is satisfied.

  2.  *A Substantial Relationship to Traditional Maritime Commerce.*

Turning to whether the "general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity," *Grubart*, 513 U.S. at 539, "docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity" because it is at a marina that vessels are stored, can obtain fuel or supplies, and are "moved into and out of

4

navigation;" further still, "most maritime voyages begin and end with the docking of the craft at a marina," *Sisson*, 497 U.S. at 367. Mr. Talbott has likewise satisfied the substantial relationship test.

But deciding that admiralty jurisdiction generally applies to this matter does not end the court's inquiry. Instead, the procedural requirements of the Limitations Act, 46 U.S.C. § 30511, must be met for a shipowner to pursue exoneration or limitation of liability.

B.   *Availability of an Action under the Limitation Act, 46 U.S.C. § 30511.*

Before the court can order notice of a complaint, enjoin any state court proceedings, order a monition period (a period in which all claims must be filed), approve a stipulation for the value of Mr. Talbott's interest in the vessel, or approve a stipulation for costs, Mr. Talbott must demonstrate that he has satisfied the statutory provisions of 46 U.S.C. § 30511. *See Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 827 (7th Cir. 1996) (citing *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996) (adherence to statutory requirements is jurisdictional)). The failure to follow certain procedural requirements may not be jurisdictional *per se*, but nonetheless adherence is necessary else the "claimant's preference for a state forum returns to the forefront" thus ending the proceeding in federal court "whether or not we call it jurisdictional." *McCarthy*, 83 F.3d at 827 n.1.

1.   *Adequacy of Notice.*

"The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a); Fed. R. Civ. P. Supp. R. F(1). If a shipowner fails to meet this statutory provision, he cannot pursue an action to limit his liability, thereby ending the matter in federal court. *McCarthy*, 83 F.3d at 828. This provision is strictly construed. In the typical case, it is satisfied by the filing of an underlying state court complaint against the shipowner. *Id.* at 829. Here, Mr. Talbott has not demonstrated that the bystander, or any other individual, filed a complaint against him in state court. This puts the court in a pickle—without an indication of an

5

underlying claim, Mr. Talbott cannot meet the statutory prerequisites of 46 U.S.C. § 30511(a) and would not be entitled to proceed in his limitation action.

Mr. Talbott traces his notice not from a state court complaint, but from a letter of representation he received on September 23, 2020 [ECF 8 ¶ 20]. His complaint to limit liability was filed March 5, 2021, just over five months after he received this letter [ECF 1]. The question is not just whether he filed his complaint within six months of notice, but if the attorney representation letter provided notice within the statute's meaning. *See McCarthy*, 83 F.3d at 829. Mr. Talbott provides very little of the letter's substance to the court, only indicating that it was an attorney representation letter on the bystander's behalf in which she says she sustained personal injuries from the incident [ECF 8 ¶¶ 15, 20]. Else he clarifies that no claims have been made and no actions are pending [*Id.* ¶ 16].

Under certain circumstances, an attorney representation letter may satisfy the Limitation Act's notice of a claim provision, but only if the letter "(1) [] informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel (3) and is subject to limitation." *McCarthy*, 83 F.3d at 829. Blanket threats or ambiguous statements are insufficient; instead, an attorney letter must have a "fairly high level of specificity." *Id.* This is because "the written notice of claim must reveal a reasonable possibility that the claim made is one subject to limitation," in that the amount being sought is more than the shipowner's interest in the vessel. *Id.* This possibility is substantiated either by the nature of the claim being so catastrophic that its value can be assumed to exceed the shipowner's interest, or by including details of the value of the claim. *See id.* (no reasonable possibility when "noting indicates that the claim would exceed the value of the vessel"); *see also In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319 (5th Cir. 2012) (catastrophic event allowed for inference of claim value); *Doxsee Sea Clam Co. v. Brown,* 13 F.3d 550, 554-55 (2d Cir. 1994) (itemized list of medical insurance claims provided reasonable probability). This is a fact intensive inquiry that obligates the court to look at the

6

notice's specificity and its asserted claims and damages. *See McCarthy*, 83 F.3d at 829 (analyzing content of attorney lien letter).

Mr. Talbott's complaint doesn't attach the attorney representation letter or state the nature or value of the bystander's claim. The complaint generally pleads the bystander's claim, and any other claims not yet filed, would exceed the yacht's value ($74,350) [ECF 8 ¶ 18]. It never explains why. Mr. Talbott provides an appraiser's affidavit for the vessel's value [ECF 8 Ex. A]. The complaint remains devoid of any basis to assess the alleged injury, damages, or value of any claim.[1] *See McCarthy*, 83 F.3d at 829 (assessing the adequacy of an attorney lien letter based on the contents of the letter); *Doxsee Sea Clam*, 13 F.3d at 555 (reviewing the adequacy of an attorney representation letter based on tone and content of the letter).

Without the benefit of such information or the letter, the court looks to the nature of the incident. Mr. Talbott describes the circumstances of the bystander's injury only in general terms: she was holding a mooring line and fell into the water. There is no indication that she was struck by the vessel; indeed the vessel is said to have veered to miss her. The possibility that an injury resulting from this incident would be so catastrophic as to clearly result in a claim greater than the value of the vessel is not plausible or reasonable. *See, e.g.*, *In re Eckstein*, 672 F.3d at 319. Further, as to any other hypothetical claim, the relatively slow speed at which a vessel often docks inside a marina belies a claim for significant property damage. *See id.* In short, the information before the court hasn't established a statutory notice.

### 2. *Adherence to Fed. R. Civ. P. Supp. R. F(2).*

Aside from these statutory requirements, *see* 46 U.S.C. § 30511(a); *see also* Fed. R. Civ. P. Supp. R. F(1), Rule F(2) describes the required content of a complaint seeking exoneration or limitation of

---

[1] Further, Mr. Talbott asks the court to direct notice of the limitation proceeding to the bystander's attorney without ever identifying who this attorney is.

liability. Fed. R. Civ. P. Supp. R. F(2). Rule F(2) requires any complaint to state with particularity "the amount of all demands including all unsatisfied liens or claims of lien, in contract or in tort or otherwise, arising on that voyage, so far as known to the plaintiff." *Id.* Now true, Mr. Talbott may not know the exact figure the bystander will seek for her injuries. But nevertheless, he must demonstrate to the court, through his own investigation or other evidence, a reasonable possibility that the Limitation Act should apply. *See McCarthy*, 83 F.3d at 829. Thus, Mr. Talbott's complaint must contain allegations that describe either the circumstances of the incident as so egregious that it is all but assumed that the value of the bystander's claim, along with any other claimant, will exceed the value of the vessel, *see In re Eckstein*, 672 F.3d at 317, or that the bystander's claim in fact exceeds the value of the vessel, *see McCarthy*, 83 F.3d at 829. Mr. Talbott hasn't even submitted the letter to provide particular details of this apparent claim.

Before Mr. Talbot may avail himself of the protections of the Limitation Act, including the issuance of notice, the ordering of monition, and an injunction on the prosecution of other state claims, he must comply with the requirements of 46 U.S.C. §§ 30511(a) & (b). *See* 46 U.S.C. § 30511(c); *McCarthy*, 83 F.3d at 828 (46 U.S.C. § 30511(a) must be satisfied before other claims can be enjoined). Failure to do so ends the matter in federal court. *McCarthy*, 83 F.3d at 828. The court ordered Mr. Talbott to substantiate the underlying claim for injury and damage to satisfy the court's jurisdictional obligations [ECF 7 at 2-3]. Mr. Talbott's amended complaint [ECF 8] included some more detail about the circumstances of the incident but otherwise omitted particular details that would support relief under this law.

Accordingly, because Mr. Talbott has not demonstrated his entitlement to pursue an action under 46 U.S.C. § 30511, the court DENIES his motion for issuance of the various orders under the Limitation Act [ECF 9] without prejudice.

SO ORDERED.

August 31, 2021
*s/ Damon R. Leichty*
Judge, United States District Court