UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IN RE TALBOTT,

          Plaintiff.

CAUSE NO. 3:21-CV-163 DRL-MGG

## OPINION & ORDER

Dean Talbott, who owns a 39-foot 2000 Carver 356 motor yacht with the hull identification number CDRP0015G900, filed suit seeking exoneration from, or a limitation of his liability for, an incident that occurred on Lake Michigan involving his yacht on September 18, 2020 [ECF 14]. This matter has now gone through several pleading iterations. Today he asks for an order directing the issuance of notice of the complaint, approving an *ad interim* stipulation, approving a stipulation for costs, ordering monition, and restraining the prosecution of claims [ECF 15].

## BACKGROUND

Mr. Talbott's second amended complaint further expands on the incident that led to this action and includes information on the estimated value of any claims against him and the extent and nature of the damage. He claims that as the yacht docked with a bystander's help, a gust of wind changed the yacht's course causing the bystander to fall from the dock into open water [ECF 14 ¶ 8]. To avoid hitting the bystander, the yacht struck the dock, damaging both the dock and the yacht [*id.*]. According to the second amended complaint, the bystander says she sustained personal injuries that required multiple hospitalizations [ECF 14 ¶ 15]. The complaint explains there is no underlying state court proceeding but references and attaches an attorney representation letter indicating that the bystander sustained personal injuries because of the accident [ECF 14 ¶¶ 15, 20; ECF 14-1].

STANDARD

The United States Constitution grants courts the power to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1. This jurisdiction is codified at 28 U.S.C. § 1333(1), which provides that a court has original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). The point of this jurisdiction, and the special rules that accompany it, is to provide the "protection of maritime commerce." *Sisson v. Ruby*, 497 U.S. 358, 367 (1990).

When a party seeks to invoke admiralty jurisdiction over a tort claim, the claim "must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Jurisdiction is traced from the activities of the boat owner, and thus when maritime jurisdiction exists, it necessarily extends to any injury proximately caused by the activity. *Id.* at 541 ("so long as one of the putative tortfeasors was engaged in traditional maritime activity, the allegedly wrongful activity will 'involve' . . . traditional maritime activity"); *see also* 46 U.S.C. § 30101(a) ("The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.").

Should admiralty jurisdiction be found, "[t]he owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a); Fed. R. Civ. P. Supp. R. F(1). If a shipowner fails to meet this statutory provision, he cannot pursue an action to limit his liability. *Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 828 (7th Cir. 1996).

DISCUSSION

The court previously concluded both the location prong and the substantial connection prong of admiralty jurisdiction were satisfied [ECF 7, 11]. *See Grubart*, 513 U.S. at 534. But before the court

can order notice of a complaint, enjoin any state court proceeding, order a monition period (a period in which all claims must be filed), approve a stipulation for the value of Mr. Talbott's interest in the vessel, or approve a stipulation for costs, Mr. Talbott must demonstrate that he has also satisfied the statutory provisions of 46 U.S.C. § 30511. *See McCarthy*, 83 F.3d at 827 (citing *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996) (adherence to statutory requirements is jurisdictional)).[1]

After a shipowner is given written notice of a claim against him, he has six months to initiate a limitation action in federal court. *See* 46 U.S.C. § 30511(a); Fed. R. Civ. P. Supp. R. F(1). This provision is strictly construed; and, in the typical case, is satisfied by the filing of an underlying state court complaint against the shipowner. *McCarthy*, 83 F.3d at 829. Here, Mr. Talbott acknowledges that no complaint or claim has been filed against him [ECF 14 ¶ 16].

Mr. Talbott says a letter of representation he received on September 23, 2020 constitutes notice of a claim [ECF 14-1]. His complaint to limit liability was filed March 5, 2021, just over five months after he received this letter [ECF 1]. The relevant inquiry is not just if he timely filed his complaint, but if the attorney representation letter provided notice within the statute's meaning to trigger this timing. *See McCarthy*, 83 F.3d at 829.

"The Limitation Act does not define written notice of claim and cases interpreting the language are surprisingly scant" both within this circuit and nationally. *Id.* (quotation omitted). An attorney representation letter may satisfy the Limitation Act's notice of a claim provision, but only if the letter "(1) [] informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel (3) and is subject to limitation." *Id.* (citation omitted). "[A]mbiguities shall be resolved against the shipowner" because "[b]efore a complaint is filed, delay on the part of the shipowner is

---

[1] *McCarthy*, 83 F.3d at 827 n.1, acknowledges that the failure to follow certain procedural requirements may not be jurisdictional *per se*, but nonetheless explains that these requirements must be met, else the "claimant's preference for a state forum returns to the forefront" and ends the proceeding in federal court "whether or not we call it jurisdictional."

harmless—certainly no judicial proceedings have begun—and the purpose of the six-month limitation," the prevention of undue delay, "is not yet actuated." *Id.*

To satisfy these three requirements, an attorney letter must have a "fairly high level of specificity" so as to avoid the nullification "of a shipowner's right to file a limitation action by sending a cryptic letter and then waiting more than six months to file a complaint." *Id.* at 829-30. This is a fact-intensive inquiry that obligates the court to look at the specificity of the notice, including its tenor, and the claims and damages asserted within it. *See Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994).

Mr. Talbott attaches to his second amended complaint a copy of the bystander's representation letter, and he pleads that the value of the bystander's claim, and any other claims not yet filed, would be more than the value of the yacht ($74,350) [ECF 14 ¶ 19]. The letter indicates that the attorney was retained to represent the bystander with respect to the personal injuries she sustained following the "accident"—a word used three times without any attribution of fault or negligence—and requests that Mr. Talbott provide insurance information for the vessel [ECF 14-1]. The letter, which is printed on legal letterhead but does nothing more than inform Mr. Talbott that the bystander has retained counsel following the "accident" and asks for insurance information, does not inform Mr. Talbott of an actual claim and is not sufficient to constitute notice of an actual or potential claim.

In *McCarthy*, 83 F.3d at 830, the court of appeals concluded that an attorney lien letter did not constitute sufficient written notice of a claim. Examining the text of the letter, the court acknowledged it contained a line stating that the victim suffered injuries "for which he claims [the shipowner] is responsible" and that the letter requested "the claim be forwarded to [the shipowner's] insurance carrier." *Id.* at 829. The letter was ambiguous because that the victim had also filed a workman's compensation claim. *Id.* Even though the letter explicitly identified the shipowner as responsible for the victim's injuries, this ambiguity counseled against construing the letter as notice.

Of note here, the letter to Mr. Talbott included even less—no mention at all of his responsibility. The letter lacks any discussion of the bystander's injuries, that Mr. Talbott is held responsible, or that a claim will be pursued. It requests no action other than to share insurance information, not even a request to preserve documents. *See McCarthy*, 83 F.3d at 829-30; *Matter of Martz*, 498 F. Supp.3d 1116, 1131-32 (D. Alaska 2020) (attorney letter asking for any insurance information alone is not sufficient to constitute notice of claim); *cf. In re The Complaint of RLB Contracting, Inc., as Owner of the Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration or Limitation of Liab.*, 773 F.3d 596, 604-05 (5th Cir. 2014) (finding multiple letters asking to preserve evidence and discussing venue and service of process were sufficient to give the owner notice); *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir. 1958) (a letter stating the possibility of a shipowner's indemnity coupled with an allegation of negligence satisfied notice).

To the extent that Mr. Talbott's subsequent correspondence with the attorney supplements or clarifies the representation letter, *see RLB Contracting, Inc*, 773 F.3d at 604-05 (multiple communications taken together can provide notice), the record still falls short of statutory notice. Mr. Talbott alleges in his second amended complaint that the attorney thereafter described the bystander's injuries from the accident as serious: a deep leg laceration requiring internal and external stiches, which became infected and required multiple hospitalizations and procedures; injury to her ear requiring the ear to be glued in three places; a neck injury requiring surgery; and other injuries to the bystander's head, upper body, and shoulder [ECF 14 ¶ 15]. But Mr. Talbott pleads the attorney did not "specifically communicate[] [the] amount of [the bystander's] alleged special damages," and has not filed a legal claim or commenced a proceeding against him [ECF 14 ¶¶ 15, 16, 19].

Fundamentally, to satisfy written notice of a claim under 46 U.S.C. § 30511(a), a shipowner must demonstrate notice that the bystander intends to hold him, and not merely an insurer, responsible for the claim. *See McCarthy*, 83 F.3d at 829-30; *see also Complaint of Bayview Charter Boats, Inc.*

*v. Sullivan*, 692 F. Supp. 1480, 1485-86 (E.D.N.Y. 1988) (an attorney letter satisfied notice of a claim when it noted the possibility that the shipowner would be held liable for any injuries). The letter and the pleaded correspondence presented to the court don't meet this standard.

As the court has previously explained, before Mr. Talbot may avail himself of the protections of the Limitation Act, including the issuance of notice, the ordering of monition, and an injunction on the prosecution of other state claims, he must comply with the requirements of 46 U.S.C. § 30511(a) [ECF 11 at 8]. *See McCarthy*, 83 F.3d at 828 (46 U.S.C. § 30511(a) must be satisfied before other claims can be enjoined). Failure to do so ends the matter in federal court. *Id.*

At this point, multiple opportunities have been given to meet the law's requirements. The court ordered Mr. Talbott to substantiate the underlying claim for injury and damage to satisfy the court's jurisdictional obligations [ECF 7 at 5]. Mr. Talbott's amended complaint [ECF 8] included more detail about the circumstances of the incident but did not plead any indication of the scope of the damage, and thus did not provide a way for the court to assess the reasonable possibility of his entitlement to liability limitation under the Limitation Act [ECF 11]. Mr. Talbott's second amended complaint reveals yet another barrier to him preemptively sheltering under the protective provisions of the Limitation Act: the attorney representation letter and the pleaded correspondence provide no statutory notice, only a scant request for insurance information. The court understands that counsel may have been acting protectively, but this action is premature, if necessary at all.

## CONCLUSION

Accordingly, because Mr. Talbot has not demonstrated his entitlement to pursue an action under 46 U.S.C. § 30511 today, this case is DISMISSED WITHOUT PREJUDICE, and his motion for various orders under the Limitation Act is DENIED [ECF 15]. This order terminates the case.

SO ORDERED.

November 16, 2021                          *s/ Damon R. Leichty*
                                                         Judge, United States District Court